J-S68035-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DONTELL JAYVON BROWNER, | : | |
| | : | |
| Appellant | : | No. 371 WDA 2016 |

Appeal from the Judgment of Sentence October 15, 2015,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0002627-2015

BEFORE:   SHOGAN, SOLANO and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 18, 2016**

Dontell Jayvon Browner (Appellant) appeals from the judgment of sentence entered following his convictions for aggravated assault, terroristic threats, unlawful restraint, simple assault, recklessly endangering another person (REAP), false imprisonment, and harassment.  We affirm.

The charges in this matter stem from an incident that occurred from the evening of January 29, 2015, through the morning of January 30, 2015, when Appellant restrained, made repeated violent threats toward, and physically assaulted his child's mother, Ashley Mosse (Mosse), at the home they occasionally shared in Natrona Heights, Allegheny County.  Appellant eventually permitted Mosse to leave the apartment to take the couple's son to a doctor's appointment.  Instead, Mosse called the police and provided a

---

*Retired Senior Judge assigned to the Superior Court.

written statement of the incident. Appellant was arrested on January 30, 2015.

Appellant was convicted of the aforementioned offenses on July 16, 2015, at the conclusion of a non-jury trial. On October 15, 2015, Appellant was sentenced to an aggregate term of three to six years' incarceration to be followed by five years of consecutive probation. Appellant's timely-filed post-sentence motion was denied on November 19, 2015. This appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises two issues for our review.

I. Did the lower court err in restricting the admission of certain text messages which evidenced discussions between the victim and [Appellant] weeks prior to the incident, which messages showed the victim's bias, hostility, and interest in revenge against [Appellant], all of which bear on the witness's credibility?

II. Was the evidence presented insufficient to prove the crime of aggravated assault where the victim suffered no serious bodily injury nor was there evidence that [Appellant] acted with the intent to cause serious bodily injury?

Appellant's Brief at 8 (trial court answers omitted).

With respect to Appellant's first issue, our standard of review concerning a trial court's admission of evidence is well settled. "Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Mosley***, 114 A.3d 1072, 1081 (Pa. Super. 2015)

(citations omitted). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa. Super. 2014) (citations and quotation marks omitted).

> The basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant. Though "relevance" has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact.

*Commonwealth v. McMaster*, 666 A.2d 724, 729 (Pa. Super. 1995) (citations omitted).

Prior to trial, Appellant's counsel produced hard copies of text messages sent between Appellant and Mosse from December 25, 2014, until the day of Appellant's arrest on January 30, 2015. N.T., 7/16/2016, at 9-14. The Commonwealth stipulated to the messages' authenticity but objected to the admissibility of any message sent prior to January 30. *Id.* at 9-10. The trial court determined that the messages sent prior to the January 29 incident were irrelevant to the question of whether Appellant was guilty of the crimes stemming from that incident and prohibited their use,

except for the purpose of impeachment. ***Id.*** at 13-14. On appeal, Appellant contends that the trial court erred in barring substantive use of messages sent and received before the incident, arguing that the messages were relevant to Mosse's "credibility," "motive to fabricate the story of the incident," and her "bias against" Appellant. Appellant's Brief at 17.

The trial court addressed Appellant's claim as follows.

As an initial matter, the court notes that it agreed with [Appellant] that the case hinged on the credibility of the victim, and it also agreed that the text messages could be relevant to impeach her credibility -- in the appropriate circumstance. That is why the court held open the possibility of admission of the texts if they became relevant for that purpose.

The court concluded that a month's worth of texts exchanged between a couple that quite clearly had a hostile relationship was irrelevant. The overwhelming majority of the texts were completely unrelated to any claims of fabrication and instead, merely confirmed the existence of an emotionally charged love-hate relationship. As counsel for [Appellant] conceded, none of the texts claimed, either directly or indirectly that [] Mosse intended to bring false charges against [Appellant] or involve the police in any way. The only conceivable "threats" at revenge were extremely vague statements such as: "F*ck your face ur gonna regret this," "Go f*uck some b*tch an die wish everything bad upon u dumb f*ck," and "Enjoy my tits you f*cking loser you'll get what's coming to you karma or the next b*tch u date caz ur a f*cking d*ckhead." [(*sic*)]. These general statements completely lacked any probative value in the instant matter.

Furthermore, the unqualified admission of the month long text exchange would have consumed unnecessary time at trial, would have unnecessarily shifted the focus on the victim, and would have been taken completely out of context. Additionally, many of the texts were sexual in nature, and the admission of

- 4 -

such texts would have resulted in irrelevant, and potentially abusive, inquiries into the victim's sex life.

It is crucial to note that this case was not resolved through a jury trial, and that there was still evidence introduced through the victim's testimony, as well as [Appellant's], that clearly conveyed to this court the turbulent nature of the relationship between the victim and [Appellant]. Indeed, [] Mosse was immediately forthcoming about her role in assuming the [Appellant's] identity to send a message to one of the [Appellant's] friends through video gaming system, claiming responsibility for [that] incident. It was also quite clear to the court that [] Mosse was a woman who was insecure[,] jealous, and suspicious of [Appellant's] infidelity, and the court certainly considered those personality traits and [] Mosse's potential bias in making its credibility determinations.

Trial Court Opinion, 5/26/2016, at 9-11 (citations to notes of testimony omitted).

Based on the foregoing, and our review of the record before us, we agree with the trial court that the content of the messages sent prior to the incident was not probative of the ultimate question of whether Appellant committed the crimes for which he was charged. We further agree that the messages had limited probative value to impeach Mosse's credibility. Accordingly, we find no abuse of discretion by the trial court and we hold that Appellant is not entitled to relief on this issue.

Appellant next argues that the evidence was insufficient to sustain Appellant's conviction for aggravated assault because the Commonwealth failed to prove that Appellant acted with malice and that Mosse suffered serious bodily injury. Appellant's Brief at 20-23.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (internal quotation marks and citations omitted).

Following our review of the certified record, the parties' briefs, and the relevant law, we conclude that pages 13 through 18 of the opinion of the Honorable Beth A. Lazzara thoroughly and correctly addresses and disposes of Appellant's second issue and supporting arguments and evidences no abuse of discretion or errors of law. Accordingly, we adopt the trial court's opinion, filed on May 26, 2016, as our own and hold, based upon the

reasons stated therein, that the trial court committed neither an error of law nor an abuse of discretion holding that the evidence presented at trial was sufficient to sustain Appellant's conviction for aggravated assault. The parties shall attach a copy of that portion of the trial court's May 26, 2016 opinion to this memorandum in the event of future proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA ) CRIMINAL DIVISION
                                   )
             v.                       )
                                     )
DONTELL JAYVON BROWNER,        ) CC # 2015-2627
                                     )
         Defendant.               )

## OPINION

This is a direct appeal following the judgment of sentence entered on October 15, 2015. Sentence was imposed as a result of the Defendant's convictions on all counts at the conclusion of a non-jury trial on July 16, 2015. The Defendant was charged with, and ultimately convicted of, Aggravated Assault (18 Pa. C.S.A. §2702(a)(1) (Count One); Terroristic Threats (18 Pa. C.S.A. §2706(a)(1)) (Count Two); Unlawful Restraint (18 Pa. C.S.A. §2902(a)) (Count Three); Simple Assault (18 Pa. C.S.A. §2701(a)(3)) (Count Four); Recklessly Endangering Another Person (18 Pa. C.S.A. §2705) (Count Five); False Imprisonment (18 Pa. C.S.A. §2903) (Count Six); and Harassment (18 Pa. C.S.A. §2709) (Count Seven). Sentencing was deferred until October 15, 2015 in order for a Presentence Investigation Report to be prepared.

On October 15, 2015, following consideration of the Presentence Investigation Report, testimony presented and the arguments of counsel, the Defendant was sentenced to three (3) to six (6) years of incarceration at Count One, to be followed by a consecutive five (5) year term of probation at Count Two. The Defendant also received

1

a five (5) year term of probation at Count Three, to be served concurrently with the probationary sentence imposed at Count Two. No further penalty was imposed at the remaining counts of conviction. The Defendant was awarded 258 days of time credit towards his sentence, and he was ordered to have no contact with the victim, Ashley Mosse. Court costs were also imposed. On October 26, 2015, the Defendant filed a post-sentence motion, which was heard on November 19, 2015, and subsequently denied. This timely appeal followed.

On April 5, 2016, the Defendant filed a timely Concise Statement of Matters Complained of on Appeal ("Concise Statement"), setting forth the following three (3) issues for review:

" a. The trial court erred when it restricted the admission of the victim's text messages to Mr. Browner in that it would have impeached the victim by showing bias, interest in revenge and hostility. These qualities obviously have a bearing on the credibility of the witness' testimony.

b. There was insufficient evidence to establish beyond a reasonable doubt to support a conviction for aggravated assault where the victim suffered no serious bodily injury nor was there evidence that Mr. Browner acted with intent to cause serious bodily injury to the victim.

c. The verdict was against the weight of the evidence when considered as a whole, the testimony of the victim was unreliable, that she had a reason to fabricate her story, and when her testimony was not supported by other facts, the verdict was based on mere surmise and conjecture and shock's one's sense of justice."

(Concise Statement, 4/5/16, pp. 3-4).

2

The allegations of error raised by the Defendant are without merit. For the reasons set forth below, this court did not commit any evidentiary errors in the admission or exclusion of proffered evidence. Additionally, this court did not commit error in finding the Defendant guilty of the charged offenses as the evidence was more than sufficient to sustain the Defendant's conviction for Aggravated Assault. Additionally, the Defendant waived his challenge to the weight of the evidence. However, should the appellate court conclude that the challenge to the weight of the evidence is not waived, the claim is entirely without merit as it is nothing more than a request that the appellate court reconsider credibility determinations already made by this court.

## I.    **FACTUAL BACKGROUND**

The Defendant and the victim, Ashley Mosse, met in 2013 and began a romantic, albeit tumultuous, relationship. At the time of the incident, they were still in the relationship, and they had a three (3) month old son together. (Non-Jury Trial Transcript ("TT"), 7/16/15, pp. 15-18, 30-31). The Defendant did not live with Ms. Mosse, but he started staying at her apartment after his parents kicked him of the house. (TT, pp. 16-18). After only two (2) weeks of staying with her, Ms. Mosse had the police remove the Defendant from her apartment. However, after being away for one (1) week, he returned there. (TT, p. 16).

Ms. Mosse was not living at the apartment full-time when the Defendant began staying there. Ms. Mosse was living at a women's shelter in Cranberry and commuting

3

between the apartment and the shelter. She was staying at the shelter due to a prior incident between her and the Defendant, and she was afraid of the Defendant. (TT, pp. 16-19, 30, 36, 50-51). On January 28, 2015, the Defendant returned to Ms. Mosse's apartment. She did not stay at the apartment that night, but rather returned to the shelter. She returned to the apartment on January 29, 2015, the date on which the incident occurred. (TT, pp. 18, 33).

During the evening of January 29, 2015, Ms. Mosse was watching television in bed with the Defendant and their infant son. (TT, p. 18). Ms. Mosse noticed that the Defendant was texting a female, with whom she suspected he had previously had an affair. (TT, pp. 18, 31). Ms. Mosse questioned the Defendant about the texts, and an argument ensued, with the Defendant becoming angry and making demeaning comments to Ms. Mosse. (TT, pp. 19, 31-32). Ms. Mosse cried herself to sleep as a result of the Defendant's treatment of her. (TT, p. 19-20).

Sometime around midnight, Ms. Mosse was awakened by the Defendant when he "ripped the covers off" of her, stuck his feet in her face, and turned up the volume on the television. (TT, p. 20). Ms. Mosse asked the Defendant to remove his feet from her face and to turn the volume down so she could go back to sleep, but the Defendant intentionally continued to irritate her. (TT, pp. 20-21). It was clear to Ms. Mosse that the Defendant was trying to start an argument. (TT, pp. 20-21). Ms. Mosse decided to remove herself from the apartment, and she told the Defendant that she was going to leave. (TT, pp. 21-22). She got out of bed, got the baby ready, placed the baby in his

4

car seat, and headed towards the door. (TT, p. 21). Ms. Mosse was at the door when the Defendant came running after her and thrust her up against the wall. (TT, p. 21). Ms. Mosse became extremely frightened because she could tell that the Defendant "was turning into that psycho person." (TT, p. 21). After pinning her against the wall, the Defendant told Ms. Mosse "you're not going anywhere." (TT, pp. 21-22). He told her he was going to kill her, stating "I will kill you." (TT, p. 22).

The Defendant put his left hand over Ms. Mosse's face and cocked his right hand back "like he was going to punch" her. (TT, p. 22). As this was occurring, the Defendant was screaming, repeatedly yelling that he would kill her and that he did not care if he went back to jail. (T.T, p. 22). The Defendant screamed that he would "slice [her] throat" while they were "driving at a high rate of speed" so that they "would all die" together. (TT, p. 22). The Defendant's threats to kill Ms. Mosse were made while he still had her pushed up against the wall. (TT, p. 22). The Defendant continued screaming and threatening Ms. Mosse for several minutes, and, with his fist still in her face, he warned her not to talk "while he was talking." (TT, pp. 22-23). Ms. Mosse started shaking because she was so afraid of the Defendant. She was afraid for her life and for the life of her baby. (TT, p. 23).

During this violent episode, the Defendant had a "crazy face" and was "very angry." (TT, p. 23). He kept pulling his fist back as if he was going to punch Ms. Mosse. (TT, p. 23). Although she wanted to leave the apartment so she and her baby would be safe from the Defendant, she eventually complied with the Defendant's repeated

5

demands for her to get back in bed. She complied because he was screaming that he would kill her if she did not do so. (TT, pp. 23-24). When the Defendant finally let go of her and was no longer pinning her against the wall, Ms. Mosse was shaking so much that she fell over as she was walking to the bed. (TT, p. 24). Ms. Mosse crawled into bed and was lying down when the Defendant climbed on top of her and continued screaming "I'll kill you!" (TT, p. 24). She kept telling the Defendant that she was sorry in an attempt to calm him down, but the Defendant instead became angry that she was interrupting him. (TT, p. 24). The Defendant grabbed a pillow from the bed and, with both of his hands, placed the pillow over Ms. Mosse's head and pushed down. (TT, p. 24). With the pillow smothered against her face, the Defendant continued screaming "I'll kill you. I'll go out with a bang. I'll kill you and kill a bunch of other people and kill myself." (TT, pp. 24-25). The Defendant threatened to kill Ms. Mosse over thirty (30) times throughout the course of the night. (TT, p. 25).

The Defendant had the pillow smothered over Ms. Mosse's face for approximately fifty (50) seconds. Although Ms. Mosse did not lose consciousness, she was unable to breathe while the pillow was pushed down over her face. (TT, pp. 24-25). She eventually managed to slide the pillow off to the side. At that point, the Defendant demanded her phone so that she could not call for help. She complied with his demand. (TT, p. 25). Ms. Mosse regrouped when the Defendant permitted her to go into the bathroom. (TT, p. 25). Although she contemplated sneaking out of the bathroom window, she chose not to do so because she did not want to leave her son alone with the Defendant. (TT, p. 26). In an attempt to calm the situation down so that

6

she could save her life, she changed her approach. When she exited the bathroom, she asked the Defendant to cuddle in an attempt to convince the Defendant that everything was fine. (TT, p. 26). Although she was still afraid of him, Ms. Mosse was trying to relieve the Defendant's anger so that she could end this violent, frightening encounter. (TT, p. 26). She reluctantly laid down in the bed with the Defendant, and they eventually fell asleep. (TT, p. 26).

Ms. Mosse woke up early the next morning and was still shaken and upset. (TT, p. 26). She had a plan to get herself and her baby out of the apartment and away from the Defendant. She lied to the Defendant, telling him that the baby had a doctor's appointment. (TT, pp. 26-27). At first the Defendant told her that she had to cancel the appointment, but she persisted and told him that she had to go because something was wrong with the baby, telling him that she would be back in two (2) hours. (TT, p. 27). The Defendant permitted her to go, telling her "Okay. You better come back." (TT, p. 27). Ms. Mosse left the apartment around 10:30 a.m. and immediately called the police. (TT, pp. 27-28, 48).

Ms. Mosse met with Officer Justin Bouch in a Wendy's parking lot and explained the events that had occurred during the early morning hours. (TT, pp. 28, 30, 45-46, 48-49). Officer Bouch told her that she could either have the Defendant taken out of the home or have him arrested. She chose to have him arrested. (TT, pp. 28, 48). She then went with Officer Bouch to the Harrison Township Police Department and provided a written statement of the incident. (TT, p. 28). While she was at the station, the

7

Defendant attempted to contact her multiple times by text message, wanting to know where she was. (TT, pp. 29, 49). Officer Bouch told Ms. Mosse to respond to the Defendant so that he would not become suspicious. Ms. Mosse told the Defendant that the appointment was taking longer than expected. (TT, pp. 29, 49). Officer Bouch secured a warrant and arrested the Defendant that same day. (TT, p. 49).

## II.    DISCUSSION

### A. The Defendant cannot demonstrate that this court abused its discretion when it restricted the admission of the victim's text messages to the Defendant. The court's ruling was not manifestly unreasonable, contrary to law, or a product of bias, ill-will, partiality, or prejudice.

At trial, the Defendant sought to admit text messages between the victim, Ms. Mosse, and the Defendant in order to highlight the volatile nature of their relationship and to suggest that the victim possessed a motive to fabricate her claims against the Defendant. (TT, p.11). The Defendant argued that such evidence was necessary to demonstrate Ms. Mosse's bias, which purportedly stemmed from her suspicions of him being unfaithful. The Defendant also alleged that the text messages showed her desire to seek revenge for his infidelity. (TT, p. 11). The text messages that the Defendant sought to admit were exchanged between Ms. Mosse and the Defendant between December 24, 2014 and January 29, 2015. (TT, p. 9). After hearing argument from each party, this court agreed with the Commonwealth's position that the text messages exchanged prior to the incident were irrelevant to the ultimate question of whether the Defendant committed the offenses with which he was charged. (TT, pp. 9-14).

8

The standard of review regarding evidentiary rulings made by the trial court is well-settled. Our appellate court have recognized that

> [t]he standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

Commonwealth v. Mendez, 74 A.3d 256, 260 (Pa. Super. 2013) (quoting Commonwealth v. Hanford, 937 A.2d 1094, 1098 (Pa. Super. 2007)).

The Defendant cannot demonstrate that this court abused its discretion in restricting the admission of the text messages because he cannot show that the ruling was manifestly unreasonable, contrary to law, or the result of bias, prejudice, ill will, or partiality. As an initial matter, the court notes that it agreed with the Defendant that the case hinged on the credibility of the victim, and it also agreed that the text messages could be relevant to impeach her credibility -- in the appropriate circumstance. (TT, p. 13). That is why the court held open the possibility of admission of the texts if they became relevant for that purpose. (TT, p. 13) (The Court: "Obviously, anything that goes to credibility will be admissible. So if [Ms. Mosse] testifies in a way that is inconsistent with those [prior texts], you can use them. I'm not going to rule on her credibility in advance . . ." but "[i]f there is an issue of credibility, you can certainly use them. That is not a problem.").

The court concluded that a month's worth of texts exchanged between a couple that quite clearly had a hostile relationship was irrelevant. The overwhelming majority of

9

the texts were completely unrelated to any claims of fabrication and, instead, merely confirmed the existence of an emotionally charged, love-hate relationship. As counsel for the Defendant conceded, none of the texts claimed, either directly or indirectly, that Ms. Mosse intended to bring false charges against the Defendant or involve the police in any way. (Post Sentence Motion Hearing Transcript, 11/19/15, p. 6). The only conceivable "threats" at revenge were extremely vague statements such as: "F*ck your face ur gonna regret this," "Go f*ck some b*tch an die I wish everything bad upon u dumb f*ck," and "Enjoy my t*ts you f*cking loser you'll get what's coming to you karma or the next b*tch u date caz ur a f*cking d*ckhead." (Appendix to Defendant's Post Sentence Motion, 10/26/15, pp. 66-67). These general statements completely lacked any probative value in the instant matter.

Furthermore, the unqualified admission of the month long text exchange would have consumed unnecessary time at trial, would have unnecessarily shifted the focus on the victim, and would have been taken completely out of context. Additionally, many of the texts were sexual in nature, and the admission of such texts would have resulted in irrelevant, and potentially abusive, inquiries into the victim's sex life. (Appendix to Defendant's Post Sentence Motion, 10/26/15).

It is crucial to note that this case was not resolved through a jury trial, and that there was still evidence introduced through the victim's testimony, as well as the Defendant's, that clearly conveyed to this court the turbulent nature of the relationship between the victim and the Defendant. Indeed, Ms. Mosse was immediately

10

forthcoming about her role in assuming the Defendant's identity to send a message to one of the Defendant's friends through a video gaming system, claiming responsibility for the incident. (TT, pp. 39-41). It was also quite clear to the court that Ms. Mosse was a woman who was insecure, jealous, and suspicious of the Defendant's infidelity, and the court certainly considered those personality traits and Ms. Mosse's potential bias in making its credibility determinations.

In assessing Ms. Mosse's credibility, this court had the opportunity to directly observe her demeanor, tone and mannerisms during the trial. The court, as it always does, took copious notes of all of the testimony and reviewed these notes for internal consistency, cohesiveness and the ring of truth in the testimony provided. Following the court's careful consideration of all of the testimony, as well as observation and scrutiny of all of the witnesses, the court found Ms. Mosse to be credible and trustworthy. She was visibly shaken and upset as she was recounting the events that transpired that night, and this court had "no difficulties whatsoever" believing her account of the incident. (TT, p. 81). The court found that Ms. Mosse was telling the truth about how the Defendant utterly terrorized her on the date in question and committed the crimes of which he was accused.

The court had valid and legitimate reasons to support its evidentiary ruling, and the Defendant is unable to show that this court's ruling was, when taken in a way most favorable to the Defendant, anything more than a mere error in judgment. The law is clear that a simple error in judgment does not amount to an abuse of discretion.

11

Therefore, the Defendant's allegation of error regarding denial of the admission of the text messages should be rejected. Mendez, *supra*, at 260.

Assuming for the sake of argument that the text messages should have been admitted without qualification, any error in this court's evidentiary ruling is purely harmless as it would not have affected the outcome of the case. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." Commonwealth v. Hairston, 84 A.3d 657, 671 (Pa. 2014). Our Supreme Court has further explained the concept of harmless error, stating that:

> "Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."
> Id. at 671–72.

Any error in not allowing the full text exchange to be admitted had, at most, a *de minimis* prejudicial effect on the Defendant because, as the court just noted, the testimony presented at trial more than adequately communicated to the court the nature of the relationship between Ms. Mosse and the Defendant, as well as her feelings towards the Defendant. Unlike a situation where it would be difficult to predict how a jury would have responded to the text evidence, this court can state with complete confidence and certainty that the admission of the text messages would not have impacted the verdict in this case at all. The court simply did not believe that Ms.

12

Mosse's testimony was fabricated out of some desire for revenge against the Defendant for his suspected infidelity. Moreover, this court reviewed the text messages in their entirety at the post-sentence motion phase, and such review only reinforced the court's conclusion that the texts were vague and irrelevant and failed to support the defense's claim of fabrication. Accordingly, the Defendant's first allegation of error should be rejected.

## B. The evidence was more than sufficient to sustain the Defendant's Aggravated Assault conviction, and the Defendant waived his challenge to the weight of the evidence.

It is well-established that a "challenge to the sufficiency of the evidence is entirely distinct from a challenge to the weight of the evidence." Commonwealth v. Smith, 853 A.2d 1020, 1028 (Pa. Super. 2004). Our appellate courts have explained the critical distinction as follows:

> A claim challenging the sufficiency of the evidence is a question of law. *Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.* Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.*

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts

13

would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, *the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.*

Smith, *supra*, at 1028 (quoting Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000) (emphasis added).

### Sufficiency of Evidence

As set forth above, the evidence presented at trial, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to establish beyond a reasonable doubt that the Defendant attempted to commit an Aggravated Assault and that he had the specific intent to cause serious bodily injury to Ashley Mosse.

A person is guilty of Aggravated Assault under 18 Pa. C.S.A. §2702(a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S.A. §2702(a)(1). "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. §2301.

Our appellate courts have explained that "[f]or aggravated assault purposes, an 'attempt' is found where an accused who possesses the required specific intent acts in a manner which constitutes a substantial step towards perpetrating a serious bodily

14

injury upon another." Commonwealth v. Fortune, 68 A.3d 980, 984 (Pa. Super. 2013) (quoting Commonwealth v. Gray, 867 A.2d 560, 567 (Pa. Super. 2005) (internal quotations omitted). To that end, "intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances." Fortune, *supra*, at 984 (citing Commonwealth v. Thomas, 65 A.3d 939, 944 (Pa. Super. 2013)).

In Commonwealth v. Alexander, 383 A.2d 887 (Pa. 1978), our Supreme Court devised a "totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction." Fortune, *supra*, at 984. The "totality of the circumstances" test was reaffirmed by our Supreme Court in Commonwealth v. Matthew, 909 A.2d 1254 (Pa. 2006), where the Court elaborated on the test as follows:

> Alexander created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. Alexander provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant different in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury.

Matthew, *supra*, at 1257 (citing Alexander, *supra*, at 889).

15

In cases where the victim does not actually suffer serious bodily injury, our Superior Court has explained that "the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury." Fortune, supra, at 985 (quoting Commonwealth v. Martuscelli, 54 A.3d 940, 948 (Pa. Super. 2012). "An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." Fortune, supra, at 985.

These principles as applied to the facts of this case -- the facts that must be viewed in the light most favorable to the Commonwealth -- are more than sufficient to establish that the Defendant attempted to cause serious bodily injury to Ashley Mosse and that he took a substantial step to do so. As outlined earlier, the Defendant became enraged when Ms. Mosse questioned his fidelity to her and when she attempted to leave the apartment with her son. He pushed her up against a wall and repeatedly threatened to kill her as he waved his fist in her face. (TT, pp. 18-19, 21-24). He screamed and threatened her for several minutes until she finally agreed to get back in bed with him. When she did finally lay down, he grabbed a pillow and pushed it down against her face with both of his hands for approximately fifty (50) seconds, during which time she could not breathe. (TT, pp. 22-25). Significantly, the Defendant continued screaming that he was going to kill her and that he did not care if he went back to jail as he was trying to suffocate her with the pillow. (TT, p. 24-25). He threatened to kill her more than thirty (30) times that night, and Ms. Mosse testified that she was afraid for her life and the life of her infant son. (TT, pp. 21, 23-24). Although

16

she did not lose consciousness, Ms. Mosse testified unequivocally that she could not breathe while the Defendant pressed the pillow against her face. (TT, pp. 24-25).

Contrary to the Defendant's argument, the fact that Ms. Mosse did not lose consciousness is not a fact that prevents a finding of Aggravated Assault. The Defendant's actions made clear that he was specifically intending to deprive her of oxygen for an extended period of time. The fact that the Defendant changed his mind after Ms. Mosse managed to slide the pillow to the side also does not preclude a finding that he specifically intended to cause her serious bodily injury in the moments preceding his change of heart. Moreover, although no other adult was there to physically intervene during the attack, there was indeed a third party present in the room who certainly could have affected the Defendant's decision to discontinue the attack -- his infant son for whom he would have had to assume sole responsibility if he continued with his attempt to suffocate Ms. Mosse.

Although Ms. Mosse, thankfully, did not suffer any serious bodily injury as a result of the attack, the totality of the circumstances demonstrates that the Defendant specifically intended to cause her serious bodily injury and that he took a substantial step to do so. The Defendant's repeated threats to kill Ms. Mosse, combined with his actions in climbing on top of her and pushing a pillow over her face for a lengthy period of time, which had the effect of depriving her of oxygen, were sufficient to establish the Aggravated Assault conviction. Accordingly, the Defendant's allegation of error that the

17

verdict is not supported by sufficient evidence is without merit, and his conviction on all charges should be upheld.

### *Weight of the Evidence*

The Defendant's final allegation of error, that the verdict was against the weight of the evidence, should be rejected. Initially, this court notes that the Defendant has failed to preserve his weight claim for appellate review because he did not raise the weight claim before this court at any time prior to, or after, sentencing. The issue was raised for the first time on appeal in the Defendant's 1925(b) Concise Statement.

It is well-settled that "a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." Commonwealth v. Griffin, 65 A.3d 932, 938 (Pa. Super. 2013) (citing Pa. R. Crim. P. 607 and Commonwealth v. Priest, 18 A.3d 1235, 1239 (Pa. Super. 2011)). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." Griffin, *supra*, at 938; See also Commonwealth v. Wilson, 825 A.2d 710 (Pa. Super. 2003) ("A challenge to the weight of the evidence must first be raised in the trial court in order for it to be the subject of appellate review."). Raising the weight claim for the first time in the 1925(b) statement does not suffice to preserve the claim because "[i]t is axiomatic that a party cannot raise an issue for the first time on appeal." Commonwealth v. Cerritos, 2015 WL 7573506, at *3 (Pa. Super. 2015) (citing Pa. R. A. P. 302(a)). Appellate review of a weight claim cannot take place without the issue having first been raised with the trial court because "[a]ppellate review

18

of a weight claim is confined to a "review of the exercise of [the trial court's] discretion, not of the underlying question of whether the verdict is against the weight of the evidence." Commonwealth v. Giordano, 121 A.3d 998, 1007 (Pa. Super. 2015). Accordingly, the Defendant's challenge to the weight of the evidence should be deemed waived on appeal and, therefore, rejected.

However, even if the weight claim is not deemed to be waived on appeal, this claim of error still fails on its merits. "One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence." Commonwealth v. Morales, 91 A.3d 80, 91 (Pa. 2014). "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses . . . . It is not for [the appellate court] to overturn the credibility determinations of the fact-finder." Commonwealth v. Blackham, 909 A.2d 315, 320 (Pa. Super. 2006).

The Defendant's contention that the verdict was against the weight of the evidence is nothing more than an invitation to the appellate court to re-weigh the evidence and second-guess this court's credibility determinations. Although the Defendant told a radically different story than the victim's during his testimony at trial, the court rejected his testimony and found it to be self-serving and not the least credible. The court paid careful attention to the mannerisms and demeanor of each witness, and the Defendant's demeanor and attitude did not provide to this court one glint of truth or trustworthiness. This court did not believe his claim that Ms. Mosse fabricated the

19

entire story in an attempt to send him to prison so that she could seek revenge for his infidelity in their relationship. As the court noted earlier, the court was aware that Ms. Mosse was insecure, angry, and jealous. However, based on her demeanor and her consistent, emotional, and unwavering account of what transpired, this court found her testimony to be very credible. This court had no trouble believing that the events on January 30, 2015 did, in fact, take place as Ms. Mosse had testified to them.

Based on Ms. Mosse's testimony, which this court believed, this court concluded that the Commonwealth had proven the elements of all of the charges brought against the Defendant beyond a reasonable doubt. The Defendant committed the crimes of harassment and simple assault when he pushed Ms. Mosse against the wall and held her there, and he committed the crime of terroristic threats when he threatened to kill her over thirty (30) times. His refusal to allow her to leave the apartment supports his convictions for unlawful restraint and false imprisonment. The Defendant committed aggravated assault, simple assault and reckless endangerment of Ms. Mosse's life when he pushed and pressed a pillow against her face while she was lying on the bed, depriving her of oxygen for a significant length of time. The Defendant's actions and behaviors here shock the conscience, not this court's verdict. *See* Morales, *supra*, at 91 ("[A] new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.").

20

## III.   **CONCLUSION**

The verdict and sentence imposed in this case should be upheld. This court's evidentiary ruling disallowing the introduction of text messages was not an abuse of discretion. The evidence was more than sufficient to sustain the Defendant's conviction for Aggravated Assault and all other charges. The Defendant waived his challenge to the weight of the evidence, and, even if the allegation of error as to weight was not waived, this allegation should be rejected as an improper attempt to have the appellate court re-weigh this court's credibility determinations

BY THE COURT:

_____
BETH A. LAZZARA, JUDGE

_____
DATE

21